**UNITED STATES of America, Plaintiff,**

v.

**Sarah PRYOR, Defendant.**

**No. 83 Cr. 275 (RO)**

United States District Court,
S.D. New York.

Jan. 10, 1984.

Rudolph W. Giuliani, U.S. Atty., S.D. New York, New York City, for the government; Celia Goldwag Barenholtz, Asst. U.S. Atty., of counsel.

Caesar D. Cirigliano, The Legal Aid Soc., New York City, for defendant; Leonard F. Joy, New York City, of counsel.

## OPINION AND ORDER

OWEN, District Judge.

Sarah Pryor moves for a dismissal of the indictment on the ground of double jeopardy. Miss Pryor, a United States post office window clerk, was tried before Chief Judge Motley and a jury over one and one-half days in August, 1983 on criminal charges of shortages of $12,000 in her stamp and cash accounts, 18 U.S.C. 643. The jury began its deliberations at 4:05 p.m. on the second day of the trial and recessed at 6:30 p.m. It continued deliberating at 10:00 a.m. the next morning, a Friday. At 1:50 p.m. it delivered a note to the Judge announcing a complete deadlock. The Judge, however, directed the jury to continue deliberating. It did, requesting and receiving further instructions, and had testimony read to it. Thereafter, at 5:50 p.m., the jury sent a note reading:

We would like a written copy of the Judge's instructions of the law pertaining to the first count of the indictment.

The Court, thereupon had the jury return to the courtroom and the following occurred:

THE COURT: Ladies and Gentlemen, I have your latest note which has been marked Court Exhibit 9, which reads as follows:

We would like a written copy of the Judge's instructions of the law pertaining to the first count of the indictment.

With respect to that, I don't have what we call a clean copy that I can send in to you, I have written it out but some of it is in my own handwriting, other portions are stricken, and I don't know that you could follow it, because I have also interjected things as I have gone along. I can re-read it to you or have the reporter re-read it.

But before proceeding to do that, I would like to ask the foreman two questions.

Mr. Foreman, the answer to the question is yes or no, without any further explanation, do you understand?

THE FOREMAN: Yes,

THE COURT: The first question is: Has the jury been able to reach a unanimous verdict as to any one of the counts in the indictment?

THE FOREMAN: No.

THE COURT: Do you think that with further time, the jury would be able to reach a unanimous verdict as to any count?

THE FOREMAN: Yes.

THE COURT: You think you can reach a unanimous verdict with further time to deliberate?

THE FOREMAN: Not a short time.

THE COURT: Pardon me?

THE FOREMAN: Not a short time.

THE COURT: Not a short time. Do you think it would be helpful to discuss that question with your fellow jurors and come back on that?

THE FOREMAN: Yes.

THE COURT: The question is whether you think with additional time the jury would be able to reach a unanimous verdict as to any one of the counts. All right.

The jury thereupon retired to the jury room for five minutes and at 6:15 p.m. it returned and the following occurred:

THE COURT: Do you have an answer now?

THE FOREMAN: Yes, your Honor. I have discussed it with my fellow jurors, and we have come to the decision that we will not be able to come to a complete unanimous verdict on any one count.

THE COURT: All right, the Court declares a mistrial. Thank you very much. You are excused, ladies and gentlemen.

The defendant asserts that the Court was in error in declaring a mistrial in light of

the foreman's initial statement that he thought a unanimous verdict could be reached if given more than a short time, and that the Court failed to consider and adopt a course which defendant urged at the time and now urges as a reasonable alternative to a mistrial, specifically, recessing to Monday morning and at that time complying with the jury's note requesting a copy of the Court's charge on Count One, which could have been prepared over the weekend and furnished to them on the resumption of deliberations.

Under the circumstances, however, I cannot agree that the Court's declaration of a mistrial was error. The jury had already announced it was deadlocked at 1:50 p.m., a fact which it but reaffirmed over four hours later. The fact that the jury, shortly before the second announcement of a deadlock, had asked for the Judge's charge on Count One in writing did not mean that it was *not* deadlocked, and the jury certainly had the right to withdraw the request. Indeed it is entirely possible that the request was one made by certain jurors in an effort to persuade those of a different opinion. In any event, I note that Judge Motley in inquiring to ascertain what the chances were of an unanimous verdict indicated to the jury that she *would* reread the charge to them if she was advised that in their opinion it was possible to reach a verdict.

I further note that while the foreman stated on inquiry in open court that he thought a verdict could be reached—though not in a short time—his answer could well have been only his own view and not that of the entire jury, for the question was not one the jurors had come into the box expecting to have put to them and was therefore not a matter they were prepared to collectively answer. What is controlling is that upon retiring and considering the question, the jury's collective answer was that it would not be able to come to a verdict on any count. Under these circumstances, the Judge was well within her discretion in declaring a mistrial, *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978) at 509–10, 98 S.Ct. at 832. The Judge was not only entitled to credit the jury's statements of deadlock made four hours apart, but also to weigh the possibility of a theretofore deadlocked jury reaching a verdict improperly influenced by the fact that it was Friday evening.

The motion to bar a retrial on the ground of double jeopardy is accordingly denied.

So ordered.